# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE: | |
| 5900 ASSOCIATES, L.L.C., | Case Number: 04-CV-74770-DT |
| Debtor, | JUDGE PAUL D. BORMAN |
| _____ / | UNITED STATES DISTRICT COURT |
| FRED J. DERY, TRUSTEE, | |
| Appellant, | Lower Court Case Number: 03-57842-R<br>Chapter 7 |
| v. | Adversary Proceeding No. 03-5334-R |
| CUMBERLAND CASUALTY & SURETY COMPANY, | |
| Appellee. | |
| _____ / | |

**OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT'S RULING GRANTING THE DEFENDANT'S MOTION FOR JUDGMENT OF DISMISSAL BECAUSE, AT THE TIME OF THE CHALLENGED TRANSFER, THE DEBTOR'S LIABILITIES DID NOT EXCEED THE VALUE OF ITS ASSETS AND, THEREFORE, THE DEBTOR WAS NOT INSOLVENT; UNAPPROVED ATTORNEY FEES ARISING FROM THE DISMISSED CHAPTER 11 CASE WERE NOT LIABILITIES OF THE DEBTOR**

Now before the Court is Trustee Fred J. Dery's appeal, pursuant to 28 U.S.C. § 158, of the bankruptcy court's ruling, that attorney fees arising from a dismissed chapter 11 case for which the attorney neither sought nor received the court's approval, do not constitute liabilities of the debtor; thus, the challenged transfer was not made by an insolvent debtor. The Court heard oral argument on May 11, 2005. Having considered the entire record, and for the reasons that follow, the Court AFFIRMS the bankruptcy court's ruling.

## I. FACTS

On April 17, 1997, 5900 Associates, LLC ("the Debtor") filed a petition for bankruptcy under chapter 11 of the United States Bankruptcy Code, *In Re 5900 Associates, LLC,* No. 97-46399, in the United States Bankruptcy Court for the Eastern District of Michigan ("bankruptcy court"). (Br. at 1; see Ex. C.) On May 15, 1997, the bankruptcy court issued an order authorizing the Debtor to retain Todd Halbert ("Halbert") as its counsel. (Br. at 1; see Ex. D.) The order provided, in part:

> Compensation shall be paid after application and Court Order authorizing payment, which application may be made and filed every 60 days after the entry of the Order for relief in the Debtor's case

(Ex. D). On June 25, 1997, the bankruptcy court dismissed the chapter 11 case. (Br. at 1.) Halbert has never filed an application for attorney fees with the bankruptcy court. (*See* Br. at 1 n.1; Resp. at 9.)

On October 14, 1997, Halbert invoiced the Debtor $35,361.73 for fees and costs incurred in the dismissed chapter 11 case and $21,011.73 in fees and costs incurred in the appeal of the dismissal of that case; $56,373.46 total. (Br. at 2; Ex. F.) On April 21, 1998, the Debtor and Halbert executed an Agreement Regarding Payment of Attorneys' Fees and Continuing Representation. (Br. at 2; Ex. G) The agreement was to ensure Halbert's continued representation of the Debtor in certain other litigation.[1] (*Id.*) On that date, Halbert invoiced the

---

[1]Specifically, in August of 1996, the City of Detroit filed suit in Wayne County, Michigan, Circuit Court against Peter Adamo and Andiamo, Inc, seeking a declaratory judgment that neither Adamo nor Andiamo, Inc. had redemption rights in certain real property. (Br. at 1.) In the fall of 1997, the City of Detroit joined the Debtor as a defendant in the action. (*Id.*) Halbert served as counsel for the Debtor in that litigation until its conclusion in 2003. (Br. at 1, 3.) During this litigation, the Debtor never paid Halbert for his services. (Br. at 3.)

Debtor a $65,000 "bonus" for that continued representation.[2]  (Br. at 2.)  The Debtor signed a promissory note in the amount of $161,119.81 to Halbert in substitution for all of his invoiced attorney fees.  (Br. at 2; Exs. H, M.)

On May 5, 1998, the Debtor and Cumberland Casualty & Surety Company ("Cumberland") executed an Indemnity Agreement.  (Br. at 2; Ex. J; Resp. at 3.)  On August 13, 1998, the Debtor executed a mortgage on certain real property to Cumberland to secure the Indemnity Agreement ("the mortgage").  (Br. at 2; Ex. K.)  The Indemnity Agreement and mortgage were to induce Cumberland to issue a $2 million surety bond on behalf of Mundy Sanitary Landfill, LLC ("Mundy"), the Debtor's affiliate.  (Br. at 2; Resp. at 3.)  Mundy defaulted in its obligations, requiring Cumberland to pay initial losses of $575,000.  (Resp. at 3.)

At the time of the mortgage transfer, the Debtor's assets totaled $800,000.  (Br. at 8.)  Besides its alleged indebtedness to Halbert in the amount of $166,756.98 under the promissory note, the Debtor was indebted to the Environmental Protection Agency ("the EPA") in the amount of at least $100,000, and to Cumberland in the amount of at least $575,000.  (*Id.* at 2.)

On June 24, 2003, the Debtor filed another voluntary petition for bankruptcy under chapter 11 in the bankruptcy court.  (Br. at 3; Resp. at 4.)  On November 12, 2003, the bankruptcy court converted Debtor's case to one under chapter 7.  (*Id.*)  The bankruptcy court appointed Fred J. Dery ("the Trustee") as the chapter 7 trustee.  (Resp. at 4.)

On December 8, 2003, the Appellant Trustee filed in the bankruptcy court, pursuant to 11 U.S.C. § 544(b), a complaint to avoid the mortgage that the Debtor granted to Cumberland.  (*Id.*)

---

[2]This type of financial dealing is exactly why Halbert's claims were required to go to the bankruptcy judge for scrutiny prior to being validated.

3

The Amended Complaint ("complaint"), filed on February 25, 2004, alleged that the mortgage constituted a fraudulent transfer under Michigan law, M.C.L. § 566.35, because the Debtor was insolvent at the time of the transfer and the Debtor did not receive a reasonably-equivalent value for the mortgage. (*Id.* at 4-5.) According to the complaint, if the mortgage was a fraudulent conveyance under Michigan law, then it would be avoidable under § 544(b). (*Id.* at 6.)

The matter was tried on September 29, 2004. After the Trustee presented his case to the court and rested, Cumberland moved for judgment under Federal Rule of Civil Procedure 52(c), which Federal Rule of Bankruptcy Procedure 7052 renders applicable in adversary proceedings, on the ground, among others, that the Trustee failed, as a matter of law, to prove that the Debtor was insolvent at the time of the transfer, an essential element of his case. (Order Granting Defendant's Motion for Judgment, Ex. S at 2; Resp. at 6.) Specifically, Cumberland argued that Halbert's attorney fees arising from his representation of the Debtor in its dismissed chapter 11 case were not liabilities of the Debtor because Halbert neither applied for nor received a court order approving such fees, as 11 U.S.C. § 330 and Federal Rule of Bankruptcy Procedure 2016 require. (Order at 3; Resp. at 5.) If such fees were not, in fact, liabilities of the Debtor, then the Trustee would have failed, as a matter of law, to demonstrate the Debtor's insolvency at the time or as a result of the allegedly-fraudulent mortgage transfer. Adjourning the trial, the bankruptcy court directed the parties to brief this issue. (Resp. at 5.)

On November 24, 2004, the bankruptcy court, per Chief Judge Steven Rhodes, after reviewing the briefs that the parties submitted, issued its Opinion and Order Granting Defendant's Motion for Judgment. In that opinion, the bankruptcy court held that Halbert's attorney fees arising from the dismissed chapter 11 case, fees totaling at least $55,000, as

4

conservatively estimated, did not constitute liabilities of the Debtor because Halbert did not obtain the court's approval of such fees. (Opinion at 4-5.) As the bankruptcy court reasoned, "11 U.S.C. § 330(a) establishes the exclusive means by which a claim for professional fees relating to a bankruptcy case is allowed and a debtor is simply not liable for professional fees for services performed on a chapter 11 case. . . [that] have not been allowed by the bankruptcy court." (*Id.* at 5.)

The bankruptcy court found that, upon deducting the $55,000 in unapproved attorney fees, the Debtor's indebtedness to Halbert under the promissory note amounted to only $111,119.81, rather than the $166,119.81 as the Trustee contended. (Opinion at 5.) The court further found that the Debtor's total indebtedness at the time of the mortgage transfer totaled only $786,119.81, comprising the $100,000 owing to the EPA, the $575,000 owing to Cumberland, and the $111,119.81 owing to Halbert. (*Id.*) According to the bankruptcy court, because the Debtor's assets of $800,000 exceeded its liabilities of $786,119.81, the Debtor was solvent at the time of the mortgage transfer and, thus, the mortgage was not avoidable as a fraudulent conveyance under Michigan law. (*Id.* at 5-6.)

Pursuant to 28 U.S.C. § 158, the Trustee timely appeals to this Court the bankruptcy court's ruling that Halbert's unapproved attorney fees arising from the dismissed chapter 11 case do not constitute the Debtor's liabilities such that the Debtor was solvent in May of 1998.[3]

## II. ANALYSIS

Bankruptcy Rule 8013 provides, in part:

---

[3] As Cumberland aptly notes, the Trustee does not challenge the bankruptcy court's factual finding that at least $55,000 of Halbert's attorney fees were incurred during the dismissed chapter 11 case. (Resp. at 12.)

> On an appeal[,] the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . .

A district court reviews *de novo* the bankruptcy judge's conclusions of law. *In re Edmonds,* 263 B.R. 828, 829 (E.D. Mich. 2001); *In re Vause,* 886 F.2d 794 (6th Cir. 1989).

> 11 U.S.C. § 330(a) provides, in part:
>
> (1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a . . . professional person employed under section 327 or 1103–
>
>     (A) reasonable compensation for actual, necessary services rendered by the . . . attorney . . . ; and
>
>     (B) reimbursement for actual, necessary expenses.
>
> (4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for–
>
>     (i) unnecessary duplication of services; or
>
>     (ii) services that were not . . . reasonably likely to benefit the debtor's estate; or . . . necessary to the administration of the case.

Rule 2016 provides, in part:

> An entity seeking interim or final compensation for services or reimbursement of necessary expenses from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.

As the bankruptcy court in *In re Mayeaux,* 269 B.R. 614, 621 (E.D. Tex. 2001), noted:

> These disclosure and enforcement provisions are 'designed to prevent bankruptcy attorneys from extracting more than their fair share from prospective debtors willing to do whatever is necessary to obtain their counsel of choice and avoid unfavorable bankruptcy proceedings. 'Courts have long recognized that the debtor is in a vulnerable position and is highly dependent on its attorney and therefore will be reluctant to object to the fees of the attorney. The purpose of

this process is to prevent overreaching of an attorney . . . .

It is undisputed that the Trustee established that the Debtor was indebted to the EPA and to Cumberland in the amount of $675,000, collectively, at the time of the mortgage transfer. (Br. at 9.) Because it is undisputed that the Debtor had only $800,000 in assets at the time of the transfer, the Trustee, therefore, must have established at trial that the Debtor was indebted to Halbert in the amount of at least $125,000 at that time. (*Id.*) It is undisputed that, at the relevant time, the Debtor owed at least $111,119.81 to Halbert in attorney fees other than those arising from the dismissed chapter 11 case. The Trustee asserts that the bankruptcy court erred in holding that Halbert's unapproved attorney fees arising from the dismissed chapter 11 case did not constitute the Debtor's liabilities such that the Debtor was solvent at the time of the mortgage transfer. (*Id.* at 6.) Cumberland asserts otherwise. Thus, whether the Trustee failed, as a matter of law, to demonstrate the Debtor's insolvency at the relevant time hinges upon the legal issue of whether Halbert's unapproved attorney fees stemming from the dismissed chapter 11 case constitute liabilities of the Debtor.

Cumberland underscores that, even absent any objections, a bankruptcy court must independently review requests for attorney fees in chapter 11 cases to ensure that the services rendered were necessary and appropriate, and that the fees requested are reasonable, as 11 U.S.C. § 330 and Bankruptcy Rule 2016 require. (Resp. at 13.) *See e.g., In re Fleming Companies, Inc.,* 304 B.R. 85 (Bankr. D. Del. 2003); *In re Inslaw, Inc.,* 106 B.R. 331 (Bankr. D.D.C. 1989). Cumberland further underscores that it is undisputed that, under § 330 and Rule 2016, a debtor's attorney is entitled to compensation for services rendered during a chapter 11 case only if a court order authorizes such compensation. (Resp. at 15-16.) *See In re Gantz,* 209

B.R. 999, 1002 (10th Cir. B.A.P. 1997)(holding that only the fees that the bankruptcy court awarded under § 330 were collectible, and that the attorney "was not entitled to any additional fees because, under § 330, no additional fee was allowed"); *In re Jeanes,* 2004 WL 1718093, at *2 (Bankr. N.D. Iowa June 17, 2004) "Because § 330(a) requires court approval to create the obligation to pay attorney's fees, absent court approval neither the debtor nor the estate is ever liable.  Court approval under § 330(a) is what creates the liability, not the performance of the services.")(citations omitted); *In re Marin,* 256 B.R. 503, 507 (Bankr. D. Colo. 2000) ("There is no other way for an attorney to be paid!  An attorney who extracts payments from debtors other than pursuant to proper disclosure, or to allowance under section 330, stands in violation of the provisions of the bankruptcy code[.]") (emphasis omitted).  According to Cumberland, because Halbert neither sought nor received an order from the bankruptcy court authorizing his fees arising from the chapter 11 case, the Debtor never became liable to Halbert for those fees.  (Resp. at 16.)

The Trustee, in essence, contends that, upon the dismissal of the chapter 11 case, the bankruptcy court lacked jurisdiction to determine Halbert's entitlement to fees arising from that case because the court, in its dismissal order, did not expressly retain jurisdiction for that or any other purpose.  (Br. at 6.)  As the Trustee notes, under 11 U.S.C. § 349, the bankruptcy estate generally re-vests in the debtor upon the dismissal of the bankruptcy case.  (*Id.*)  Specifically, § 349(b)(3) provides: "Unless the court, for cause, orders otherwise, a dismissal of a case . . . revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title."  The Trustee argues that, under § 349, the case's dismissal extinguishes the bankruptcy court's jurisdiction over the case unless, for good

cause, the court retains jurisdiction. *In re M.O.D., Inc.,* 170 B.R. 465 (M.D. Ala. 1994); *In re Fairway Church,* 131 B.R. 407 (W.D. Tenn. 1991). The Trustee further contends that, because the bankruptcy court, in its dismissal order, expressly failed to retain jurisdiction over the case, the court lacked jurisdiction to order the Debtor to compensate Halbert for attorney fees arising from the dismissed chapter 11 case and, thus, to review Halbert's entitlement to those fees. Rather, according to the Trustee, the debtor is free to exercise control over all of the re-vested property of the estate, such as by disposing of those assets via private contract. *In re Kent Funding Corp.,* 290 B.R. 471 (E.D. NY 2003); *In re Elias,* 188 F.3d 1160 (9th Cir. 1999);[4] *In re Barrett*, 149 B.R. 494 (Bank. R. N.D. Ohio 1993). Indeed, the Trustee argues that, because the bankruptcy court lacked jurisdiction to determine Halbert's entitlement to attorney fees following the case's dismissal, Halbert's only means of securing such fees was via private agreement with the Debtor. (*See* Reply at 2.) The Trustee contends that the Debtor's private agreement with Halbert for fees arising from the dismissed chapter 11 case is enforceable because it is enforceable under Michigan law.[5] (Br. at 7.)

---

[4]Cumberland, in response, asserts that *Kent* and *Ellis* are inapposite to the legal question at issue here because those cases only addressed whether the bankruptcy courts should reopen the dismissed chapter 11 cases and assume jurisdiction over the debtors' attorneys' attempts to collect fees in state courts, not whether those attorneys could collect fees unauthorized by court order. (Resp. at 18.)

[5]Specifically, the Trustee asserts that the fee agreement is fair and equitable. (Br. at 7.) *See Riley v. Wilson*, 280 Mich. 223 (1937). The Trustee further asserts that the private agreement, as memorialized in the promissory note, is presumptively valid due to the absence of fraud or undue influence in its execution. *See Fleet Business Credit, LLC v. Krapohl,* 2004 WL 2179235 (Mich. Ct. App. Sept. 28, 2004). (Br. at 8.) Cumberland, in response, asserts that the fee agreement and/or the promissory note are unenforceable under Michigan law as being clearly excessive or having been based upon mutual mistake. (Resp. at 20-22.)
  Yet, because the Court, as discussed below, concludes that, under the Bankruptcy Code, Halbert's unapproved attorney fees arising from the dismissed chapter 11 case do not constitute

Cumberland contends, in essence, that the dismissal of a chapter 11 case does not extinguish the bankruptcy court's jurisdiction over attorney fees arising from that case in the first instance. *See e.g., In re Fox,* 140 B.R. 761, 762 (Bankr. D.S.D. 1992 (holding that "counsel may only obtain or retain compensation upon court approval of fee applications," and holding that a bankruptcy court has jurisdiction to determine attorney fees even after the case's dismissal); *In re Mayeux,* 269 B.R. 614, 628 (Bankr. E.D. Tex. 2001) ("The honest and comprehensive disclosure of compensation payments plays such a vital role in maintaining the integrity of the bankruptcy system that a bankruptcy court is compelled to enforce these disclosure provisions in an aggressive manner, even when the underlying case has been subsequently dismissed.");[6] *In re Quaker Distributors, Inc.,* 189 B.R. 63, 68 (Bankr. E.D. Pa. 1995) ("[T]here is no reason to conclude that dismissal of a case could or should eliminate bankruptcy court review of a debtor's transactions with its professionals.").[7] According to Cumberland, the policy of judicial oversight of attorney fees underlying § 330 is equally, if not more, important when the case is dismissed as it is when the case concludes by other means. (*Id.* at 19.) As Cumberland aptly argues, permitting attorneys to avoid judicial oversight of their fees under § 330 where the underlying bankruptcy cases are dismissed would, as a matter of policy, encourage attorneys to instigate

---

liabilities of the Debtor, the Court need not and does not express any opinion on whether the fee agreement or promissory note would otherwise be unenforceable under Michigan law.

[6]The Trustee, in reply, contends that *Fox* and *Mayeux* are inapposite because the bankruptcy courts, unlike here, expressly retained jurisdiction of the fees pursuant to the dismissal orders. (Reply at 3.) The Trustee argues that these cases recognized that the bankruptcy courts lack jurisdiction post-dismissal over professional fees unless the dismissal order retained such jurisdiction. (*Id.*).

[7]The Trustee, in reply, asserts that *Quaker* affirmed the bankruptcy court's jurisdiction to rule upon professional fees post-dismissal only where the dismissal order properly retained jurisdiction for that purpose. (Reply at 3-4.)

such dismissals to shield their requested fees from a judicial determination that they are excessive or unnecessary. (*Id.*)

Cumberland, in particular, challenges the Trustee's argument that the re-vestment of the estate's property with the Debtor upon the case's unconditional dismissal deprived the bankruptcy court of jurisdiction to determine attorney fees arising from the case. As Cumberland notes, § 349 is silent on the effect of a bankruptcy case's dismissal on attorney fees incurred during the pendency of the case. (Resp. at 16-17.) According to Cumberland, had Congress intended the dismissal of a chapter 11 case to extinguish the bankruptcy court's duty to review attorney fees under § 330, it would have expressly said so in § 349. (Resp. at 17.) Moreover, as the bankruptcy court recognized in *Quaker,* 189 B.R. at 68, the re-vestment of the estate's property with the debtor after the case's dismissal "does not resolve the issue of the rights of third parties in that property via-a-vis the [d]ebtor"; rather, the bankruptcy court must still discharge its duty to determine the entitlement of the debtor's attorney to fees arising from that case and, thus, the debtor's right to retain the re-vested property of the estate.

Contrary to the Trustee's contention, Cumberland aptly maintains that the re-vestment of the estate's property with the Debtor upon the case's unconditional dismissal does not render any private contract for attorney fees incurred during the case enforceable without judicial review under § 330. (Resp. at 19.) The Revision Notes to 11 U.S.C. § 330 underscore that "fees are not a matter for private agreement" in bankruptcy cases due to the public-interest concerns inherent in the award of such fees. Thus, as Cumberland points out, the Debtor's execution of the fee agreement and corresponding promissory note cannot render the Debtor indebted to Halbert for the unapproved attorney fees arising from the dismissed chapter 11 case where those fees are

11

otherwise invalid and unenforceable under § 330. (Resp. at 20.)  In other words, for purposes of bankruptcy law, the Debtor cannot transform an unenforceable claim under the Bankruptcy Code into an enforceable one by virtue of private agreement, even if such an agreement were otherwise enforceable under Michigan law.  *See e.g., In re Inslaw, Inc.,* 106 B.R. 331, 333-34 (Bankr. D. D.C. 1989) (holding that a debtor's agreement to pay a different fee is irrelevant and does not affect the bankruptcy court's authority to determine an attorney's compensation under § 330).

The Trustee, in reply, asserts that 11 U.S.C. § 350 supports his position.  Section 350 provides:

> (a)    After an estate is fully administered and the court has discharged the trustee, the court shall close the case.
>
> (b)    A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

11 U.S.C. § 350.  The Trustee asserts that: 1) only "closed" cases may be reopened under § 350; 2) only cases that have been "fully administered" may be closed; and 3) dismissed cases have not been "fully administered."  (Reply at 1.)  The Trustee concludes, from these premises, that a dismissed case may not be re-opened under § 350.  (Reply at 2.)  *See e.g. In re Woodhaven, Ltd.,* 139 B.R. 745 (Bankr. N.D. Ala. 1992) (holding that a chapter 11 debtor's partners could not rely on § 350 to reopen a case that was dismissed because § 350 only deals with cases that have been closed, not cases that have been dismissed).  According to the Trustee, because § 350 does not permit the reopening of a dismissed case, a bankruptcy court lacks jurisdiction, absent its retention of such, in dismissed cases.  (Reply at 2.)  The Trustee asserts that, consequently, Halbert could not have filed and the bankruptcy court would not have had jurisdiction over an

application for fees arising from the dismissed chapter 11 case. (*Id.*)

Yet, the Trustee's logic is unsound. Even if § 350 did not permit the re-opening of a dismissed case, the Trustee could not reasonably conclude from this premise that a bankruptcy court, therefore, lacks jurisdiction to determine attorney fees following the case's dismissal. By its very terms, § 350 only applies to cases that are "closed," and, by the Trustee's own logic, dismissed cases cannot be "closed" because they have not been "fully administered."

As the bankruptcy court, in *In re Lowe,* 97 B.R. 547 (Bankr. W.D. Mo. 1987), recognized:

> The Court has the inescapable duty to determine the reasonableness of attorney's fees awards. . . . This duty must be performed even after dismissal of the case, for the court retains jurisdiction to determine the distribution of funds which remain *in custodia legis*, as do attorney's fee awards both on the basis of recognized jurisdictional principles and also on the basis [of] the court's well-established duty and power to regulate the practice of counsel before it.

*Id.* at 548-49 (citations and footnotes omitted). The Trustee, in reply, asserts that *Lowe* is inapposite because the bankruptcy court there, unlike here, retained jurisdiction after the dismissal of the chapter 11 case to rule upon attorney fees. (Reply at 5.) However, a court may retain only that jurisdiction which it possesses in the first instance; thus, jurisdiction or a lack thereof cannot turn upon whether the court's dismissal order expressly provides for the retention of certain jurisdiction. To hold otherwise would be to exalt form over substance. Thus, to the extent that the Trustee contends that the bankruptcy court's failure expressly to retain jurisdiction over attorney fees in its dismissal order somehow divests the bankruptcy court of jurisdiction, such a contention is unsound. *See Fox,* 140 B.R. at 764 (holding that, even if the order dismissing the bankruptcy case did not express retain jurisdiction over matters regarding

13

attorney fees, the court had jurisdiction over such fees regardless of that dismissal); *Quaker*, 189 B.R. at 68 (holding that the bankruptcy court's expressly-stated intention to review fee applications in its dismissal order simply constitutes the law of the case, not a prerequisite to jurisdiction);

The Trustee asserts that the bankruptcy court never gave Halbert notice that he must apply to the court for an award of attorney fees arising from the chapter 11 case. *Cf.* Notice Regarding Attorney Fees in Dismissed Chapter 13 Cases. Yet, the bankruptcy court's order authorizing the Debtor to retain Halbert as counsel expressly provided that Halbert would receive compensation for his services only after seeking and obtaining the court's authorization of those fees. (Ex. D.)

On balance, the Court concludes that the Bankruptcy Code, case law interpreting the Code, statutory and public policy, and pure logic dictate that Halbert's unapproved attorney fees arising from the dismissed chapter 11 case cannot constitute liabilities of the Debtor.

### III. SUMMARY

For the preceding reasons, the Court AFFIRMS the bankruptcy court's ruling that Halbert's unapproved attorney fees arising from the dismissed chapter 11 case are not liabilities of the Debtor, the Trustee failed, as a matter of law, to demonstrate that the Debtor was insolvent at the time of the mortgage transfer, and, therefore, the Defendant's motion for judgment of dismissal should be granted.

SO ORDERED.                                              s/Paul D. Borman  
                                                         PAUL D. BORMAN  
                                                         UNITED STATES DISTRICT JUDGE

Dated:  5/13/05  
         Detroit, Michigan

14